## Baird *versus* Pettit.

1. The plaintiff was employed as draftsman in the defendant's locomotive works; a carpenter employed in "jobbing" for defendant in any part of the works was, by the direction of the defendant, superintending the excavation of a cellar under the building, employing and paying hands, &c. He had a large pile of dirt thrown on the public foot-walk; the plaintiff in leaving the house in the dark, after ceasing his day's work, fell over the dirt and was injured. *Held*, that the plaintiff and carpenters were not fellow-servants in the same common employment, so as to relieve the defendants from liability from the carpenter's negligence.

2. Servants are engaged in a common employment when each by ordinary sagacity might foresee that the employment may expose him to risk from the other's negligence.

3. The plaintiff having ceased work for the day and left the shop, the relation of master and servant had ceased when the injury occurred; he was as any other citizen.

February 2d 1872.   Before Thompson, C. J., Agnew, Sharswood and Williams, JJ.

Error to the District Court of *Philadelphia:* No. 58, to July Term 1871.

This was an action on the case brought February 29th 1868, by William Pettit against Matthew Baird, Charles T. Parry and George Burnham; a number of others were originally named as defendants, all whose names were stricken from the record.

The declaration alleged that the defendants were owners and possessors of a building in Broad street, Philadelphia; that being so possessed of the same, they negligently allowed dirt and rubbish to be thrown out of it upon the street in front thereof; that plaintiff was passing along said highway and slipped on said pile of dirt, whereby he was damaged to the extent of $15,000.

The accident occurred in November 1865.  The undisputed facts seemed to be these:

At that time Matthias W. Baldwin and Matthew Baird were engaged as locomotive-engine builders, under the firm-name of M. W. Baldwin & Co., and occupied the large manufactory on Broad street, between Buttonwood and Hamilton streets. The plaintiff was then, and had been for thirty-five or forty years previously, engaged in making drawings for tools, and seeing that the work was done in accordance with the drafts.  About the time of the accident, an excavation was being made of a cellar of the manufactory in carrying on their business.  The dirt from excavation was thrown out on the side-walk.  In leaving the building, after having quitted his work in the evening, the plaintiff in going along the pavement fell over the heap of dirt thus thrown out.  He alleged that he was thereby seriously injured in his back, so as to be prevented from performing his usual work, besides enduring much pain.  Baldwin died after the accident.

[Baird *v.* Pettit.]

The plaintiff testified that he occupied a room in the front of the building on Broad street; he went out of the building shortly after six o'clock in the evening, went up Broad street on his way home, for a short distance, when he "pitched into a pile of dirt," fell on his hands and knees and was badly hurt. He further testified as to the character and continuance of his injury and suffering.

There was other evidence corroborative of the plaintiff on these points.

David Kramer testified that he was a carpenter, and had been in the habit of doing jobbing-work about Baldwin's shop. He was "employed to lay a new floor and excavate the cellar, to superintend the job. Dirt was excavated from that cellar, thrown from there on the foot-walk. By my orders this excavation was done. I was directed to have it done by the firm of Baldwin & Baird. There was an agreement between us for me to receive a certain amount of profits on the labor. Alterations were explained to me how they wanted them done, and placed in my hands to have the work done. I employed the workmen and I paid them. They were to look to me for orders, and not to the firm.

" I had a shop outside, and I worked at the business generally. The bills were presented to me; there was a sub-agreement with Wilt & McClellan to do the excavation and the removing the dirt. They were men specially employed in that business; I employed them and paid them; they were to do it by the day, and to furnish the necessary men and carts; the men were of their own employment, so were the carts; * * * I did all their work; don't know that we made an agreement for any job; I was to employ the labor and be responsible for it—to be responsible that they used care and saw the work properly done; when I wanted money I would get it from them; the bills were brought to me by Wilt & McClellan; the firm were customers of mine, and I did their work generally; there was no special agreement about this job; they told me they wanted the cellar dug out and laid. I employed the hands necesary for the work I had. If they wanted anything different from the original plan they informed me of it; if I didn't do exactly what was wanted they would tell me what was to be done, sometimes Mr. Baird, sometimes Mr. Parry, sometimes Mr. Baldwin. No particular agreement as to this particular work; they pointed out what was to be done; I went on in the usual way; Parry was the superintendent; when anything of the sort was pointed out, I obeyed their instructions; wasn't independent of their orders in doing the job; I was subject to their orders; saw Baird and Parry during progress of business; sometimes they'd come in and sometimes I'd go to them; if I wanted any instructions I'd go to them; they'd give me my instructions; I don't say

[Baird *v.* Pettit.]

they gave me any instructions about this particular business; they always gave instructions first; I was looked on to carry them out; I acted under their orders throughout; don't know I did or did not get any instructions during this particular job; can't draw any distinction between this and any other; in this and every other acted under their orders; charged so much advance on the bills; men from day to day, worked under my superintendence; no round contract to do anything; I acted as superintendent over them; my business was to see that the work was properly done. If the work was improperly done I was responsible. By instructions I mean when they wanted anything done they would give me the plan and tell me to do it; if not properly done I was responsible; the bills I presented were not the bills of the workmen, but my own, which included the price I paid; they were responsible to me, and I to Baldwin & Co.; by responsible, I mean it was my business to see that the work was well done; the workmen took instructions from me, and did not get them from Baldwin & Co.; in relation to taking out the dirt, that was the business of the cellar-diggers to haul it away—part of their contract with me; I engaged them by the day to do the work; I don't know anything about the regulations of the shop."

The defendants gave evidence as to the character of the employment of Kramer and Pettit; also evidence that Pettit had been in very feeble health from rheumatic affections, principally in his back, and had been no more unable to attend to his duties after the accident than before, together with evidence as to other particulars tending to sustain their defence.

The court amongst other things charged : * * *

"A master or employer is not responsible for an accident to one servant or employee through the negligence of a fellow-servant or employee in the course of the business or employment in which they are engaged. But there is an obvious distinction between that case and the case of an accident said to have arisen from negligence in a matter which did not constitute part of the regular business of locomotive building, and which was only an improvement or repair of the premises. Now if defendants were making repairs in the premises, and either they or the agents whom they employed were guilty of negligence in making repairs, or in not properly protecting people against the obstructions created in making repairs, they are as much responsible to one of the workmen in the establishment as they would be responsible to anybody else."

The court refused to charge as requested in defendants' 2d and 3d points, which were :—

"If Kramer was not employed to do the work of excavation as an independent employment, but, under the control and supervision of defendants, and he, or the workmen under him, performed

[Baird *v.* Pettit.]

it negligently, whereby the plaintiff was injured, he cannot recover against defendants if he was also, as he states, in their employ at the time.

"If Kramer was not employed to do the work of excavation as an independent employment, but, under the control and supervision of defendants, and he, or his workmen, performed it so negligently that plaintiff was thereby injured, he cannot recover against defendants, if he also was in their employ at the time, under an agreement to be paid for his services, a percentage of the profits of the business."

The defendants' 4th point was :—

"Where servants are engaged in a common employment and with a common object, an injury sustained by one servant, in consequence of the negligence of a fellow-servant, gives no right of action against the master, although the servants are not engaged in effecting the same common immediate object, but are occupied in different departments of duty."

In answer the court charged :—

"It is a rule of law where several persons are employed in the same business by one master or proprietor, and one is injured by an accident in the course of prosecution of the business arising out of negligence of a fellow-servant or employee, he cannot have an action against the master or proprietor, because, on entering into the employment, he assumed all the ordinary risks attendant upon it. But this does not apply to an injury resulting from negligence in matters not immediately connected with the prosecution of the business and not a part of it."

The defendants' 5th point was :—

"If the defendants used the building in front of which this accident occurred, in the business of locomotive building, as a manufactory, and employed therein men (not exercising an independent employment) to build locomotives, and others to clean out rubbish accumulated in their business, or to make alterations necessary to adapt it to their business, such workmen were engaged in a common employment such as exonerated the defendants from liability to the former for injuries occasioned by the negligence of the latter in work done whilst both were thus employed."

This point was refused.

The defendants' 6th point was :—

"If the persons who excavated and threw out the dirt were employed by Kramer, and were under his direction, plaintiff cannot recover."

The court answered :—

"This would be so, if the facts were that Kramer's employment was an independent employment, and defendant had no control over him, or over the work in its progress, or over those who had the work in hand. The testimony of Kramer himself is, that he

[Baird v. Pettit.]

superintended the work for the firm, and received compensation for doing so, being a percentage upon the cost of it."

The court instructed the jury to find a verdict for Parry and Burnham and the jury found accordingly. They found a verdict for the plaintiffs against Baird for $12,000.

The court discharged a rule obtained by the defendant for a new trial, on the plaintiff entering a remittitur of the verdict for all the damages found above $5000.

The defendant Baird took a writ of error and assigned for error the part of the charge above given and the answers to his points.

*J. G. Johnson* and *C. Gibbons*, for plaintiff in error.—Where one man enters into the service of another, in consideration of the pay for which he bargains, he assumes all its risks, including that of the negligence of those co-workers with whom he will be brought in contact: 3 Fisher's Digest 5757–60.

A fellow-servant is any one serving the same master and under his control, whether equal, inferior or superior to the injured person, in his grade or standing : Shearman & Redfield on Negligence, sections 100, 109 ; Barton's Hill Coal Co. v. Reid, 3 Macq. H. L. Cas. 266 ; Ryan v. Cumberland Valley Railroad, 11 Harris 386 ; Morgan v. Vale of Neath Railway Co., 5 Best and Smith 570, s. c. 1 Q. B. L. R. 152 ; Lovegrove v. London Railroad Co., 16 C. B. N. S. 669 ; Hard v. Vermont Railroad, 32 Vermont 473 ; Caldwell v. Brown, 3 P. F. Smith 456 ; Gilman v. Eastern Railroad Co., 10 Allen 233 ; Coon v. Utica Railroad Co., 7 N. Y. 489 ; Boldt v. New York Central Railroad, 18 Id. 443 ; Wright v. New York Central Railroad Co., 25 Id. 564 ; Waller v. South Eastern Railroad, 2 Hurl. & Colt. 101 ; Hutchinson v. Railway Co., 5 Exch. 349 ; Wiggett v. Fox, 11 Id. 332 ; O'Donnell v. Allegheny Valley Railroad Co., 9 P. F. Smith 241 ; Brown v. Acrington Co., 34 L. J. Ex. 208.

*R. P. White* and *G. H. Earle*, for defendant in error.—A person employed cannot take into account a risk which he has no reason to anticipate, and he does take into account the risks which the average experience of his fellows has led them, as a class, to anticipate: Farwell v. Boston and W. R. R., 4 Metcalf 49.

They cited and commented on the cases referred to by the plaintiff in error. Catawissa Railroad v. Armstrong, 13 Wright 186, Hunt v. Penna. Railroad, 1 P. F. Smith 475, Cumberland Valley Railroad v. Myers, 5 Id. 288, show that the rule exempting the master from suit is not to be extended, and that if O'Donnell's case was not within the rule this cannot be.

The opinion of the court was delivered, November 4th 1872, by WILLIAMS, J.—The plaintiff below was employed as drafts-
20 P. F. SMITH—31

[Baird *v.* Pettit.]

man in the works carried on by the defendant for the manufacture of locomotive engines. On the evening of the 15th of November 1865, after the hands had quit work, he left the building where he was employed, and was on his way home, when he fell over a pile of dirt and rubbish on the sidewalk in front of the premises, a few feet from the steps of the building, which had been thrown out in deepening a cellar, and left on the pavement, and in falling received the injury for which this action was brought. The work of excavating the cellar was done under the superintendence of the carpenter employed to do the jobbing work about the premises, but the men who did the excavation, as the jury have found, were subject to the defendant's direction and control.

Is the defendant, then, liable for the injury occasioned the plaintiff by their negligence? If they were engaged in the same common employment with the plaintiff, the defendant is not responsible for the injury, because the plaintiff in entering into the defendant's service assumed all the risks usually and necessarily incident to the employment. One of these risks, as is well settled, is the liability to injury from the negligence of fellow-workmen. But if they were not in the same common employment, the defendant is liable for the injury occasioned by their negligence, for the plaintiff did not take upon himself any risks except such as are ordinarily incident to the business in which he was engaged. The defendant's business was the manufacture of locomotive engines, for which the plaintiff was employed to make the drawings. In accepting the employment he took upon himself all the risks necessarily incident to the business. But the workmen by whose negligence he was injured were not engaged in the manufacture of engines, nor in the performance of any service connected with the business. There is not a particle of evidence that the cellar they were excavating had been or was intended to be used for any purpose connected with the business carried on by the defendant. If, in order to exempt the master from responsibility, it is not necessary that "the servant causing, and the servant sustaining the injury should both be engaged in precisely the same or even similar acts," it is essential that they should be engaged in the same common employment, and that they should be working for the same common end. As it was the plaintiff's business to make drawings for tools and engines, all persons engaged in their manufacture, or in carrying on the works, however employed, must undoubtedly be regarded as his fellow-workmen and engaged in the same common employment. But with what propriety can it be said that the workmen who excavated the cellar were engaged in the same common employment as the plaintiff? Servants, it is said, are engaged in a common employment when each of them is occupied in service of such a kind that all the others, in the exercise of ordinary sagacity ought to be able to foresee, when accept-

[Baird v. Pettit.]

ing their employment, that it may probably expose them to the risk of injury in case he is negligent.   That this is the proper test is evident from the reason assigned for the exemption of masters from liability to their servants, viz. : that the servant takes the risk into account when fixing his wages.   He cannot take into account a risk which he has no reason to anticipate, and he does take into account the risks which the average experience of his fellows has led him, as a class, to anticipate: Shearman & Redfield on Negligence 109.   If this is the rule—and we are not disposed to question its soundness—how could the plaintiff, in the exercise of ordinary sagacity, foresee, when accepting the employment of draughtsman, that it would probably expose him to the risk of injury from the negligence of the workmen employed by the defendant to excavate the cellar?   What reason had he to anticipate the risk so as to take it into account in fixing his wages ? Manifestly the negligence which occasioned the plaintiff's injury was not one of the risks which he assumed in entering into the defendant's employment.

But there is another reason for holding that the rule which exempts a master from liability for an injury occasioned by the negligence of a servant does not apply in this case.   The relation of master and servant did not exist between the parties when the plaintiff received the injury.   He was not then in the service of the defendant; he had quit work and was on his way home.   He was no longer subject to the defendant's control, or bound to obey his orders.   As soon as he left the building he was his own master. He was then no more in the defendant's service than any other citizen passing along the street, and he was entitled to the same rights and immunities.   If the relation of master and servant did not cease when he left the building, after his day's work was done, when did it?   It cannot be pretended that it followed the plaintiff home and remained with him while there.   And if not, it must have ceased when he left the building, and he had the same right to an unobstructed sidewalk in front of the defendant's premises as any other citizen ; and, if injured by a dangerous obstruction, the same remedy for an injury.   It will scarcely be contended that if, while on his way home, he had been run down by the defendant's carriage, through the carelessness of the driver, the defendant would not have been responsible for the injury, because the negligence of the driver was one of the risks which the plaintiff assumed when he entered into his service.   But in principle what difference is there between the two cases ?   Why is not the driver of defendant's carriage as much the plaintiff's fellow-servant as the digger of the cellar ?   And why should the plaintiff be required to foresee and take into account the risk arising from the negligence of the one and not of the other ?   There is no real difference between the cases, and neither case is within the rule which exempts masters

[Baird *v.* Pettit.]

from liability for injuries occasioned by the negligence of their servants. It is clear that this case is not within the rule, not only for the reason that the injury did not happen to the plaintiff while he was engaged in the defendant's service, but because it was not occasioned by any of the risks he assumed when he entered into his employment. The risk which occasioned the injury was not one incident to the business, and to which only the workmen engaged in carrying it on were exposed; but one unconnected with the business, and to which all citizens having occasion to pass along the street were as much exposed as the plaintiff and his fellow-workmen.

It follows from what we have said that there was no error in the instructions given by the learned judge of the District Court to the jury, or in his refusal to affirm the points submitted by the defendant.

Judgment affirmed.