# Sloan, Appellant, *v.* Philadelphia & Reading Railway Company.

*Negligence—Railroads—Act of April 4, 1868, P. L. 58.*

1. Where a person drives a buggy on the premises of a railroad company for the purpose of superintending the work of his employee in unloading a car of coal on a siding belonging to the railroad company, and after·so doing continues to drive along the siding for about 100 feet, and then turns across the tracks at a permissive crossing and is struck and injured by a train negligently operated, such person is not barred from recovering damages from the railroad company by reason of the Act of April 4, 1868, P. L. 58.

2. In such a case as the plaintiff's business of superintending the work he had on hand on the railroad company's premises had ceased, and as he was on his way at the time of the accident to attend to business with which the railroad company was not related, he was no longer in the position of a fellow servant of the railroad company's employee whose negligence caused the accident.

*Practice, C. P.—Perverse verdict—New trial—Judgment non obstante veredicto.*

3. The credibility of testimony in general is for the jury, and the remedy for a perverse verdict, or one against the weight of the reasonable and properly credible evidence, is a new trial—a remedy that ought to be freely applied whenever the verdict in the opinion of the court is perverse in the sense that it goes beyond the limits of a reasonable difference of opinion upon the facts as found or admitted. But the remedy in this form is not the same as that of nonsuit, and care should be taken to avoid confusing them; and this applies equally when judgment non obstante is resorted to as a remedy.

Argued Jan. 19, 1911. Appeal, No. 264, Jan. T. 1910, by plaintiff, from judgment of C. P. No. 2, Phila. Co., Sept. T. 1906, No. 5,020, for defendant non obstante veredicto in case of John J. Sloan v. Philadelphia & Reading Railway Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for personal injuries.

The opinion of the Supreme Court states the facts of the case.

Verdict for plaintiff for $14,638. Subsequently the court entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*Augustus Trask Ashton,* with him *Maurice V. Daniels* and *Victor Frey,* for appellant.—The act of 1868 has no application, unless the plaintiff at the time of the accident was engaged in railroad work: Spisak v. B. & O. R. R. Co., 152 Pa. 281.

Plaintiff was not engaged in railroad work at the time of the accident: Christman v. Railroad Co., 141 Pa. 604.

*Wm. Clarke Mason,* for appellee.—The act of 1868 applies: Spisak v. Railroad Co., 152 Pa. 281; Baltimore & Ohio R. R. Co. v. Colvin, 118 Pa. 230; Keck v. Railroad Co., 206 Pa. 501; Mulherrin v. Railroad Co., 81 Pa. 366; Penna. R. R. Co. v. Price, 96 Pa. 256; Fleming v. Railroad Co., 134 Pa. 477; Foreman v. Railroad Co., 195 Pa. 499.

OPINION BY MR. JUSTICE STEWART, April 10, 1911:

A former appeal in this case, reported in 225 Pa. 52, was from a judgment of nonsuit; here it is from a judgment for defendant non obstante. In a per curiam opinion in

the former appeal we held that the plaintiff having affirmatively made out by testimony, which if believed showed a case clear of contributory negligence; whether it was rebutted or not by other testimony, was for the jury, and the judgment was accordingly reversed.  Upon submission of the case in the latest trial,—it has been tried three times,— after a charge pronouncedly favorable to the defendant, the jury again found for the plaintiff.  Except as the evidence produced by the plaintiff on this trial differs in some material respect from that produced on the former, our adjudication there as to its sufficiency to make out a prima facie case, must be regarded as final and conclusive.  That there is any such variance is not pretended. Indeed it was admitted upon argument that the evidence was practically the same.  The questions touching this feature of the case, so elaborately discussed in the opinion filed making absolute the rule for judgment n. o. v. and by the counsel in their argument before us, do not call for consideration.  On the trial the court was asked to hold that the case fell within the provisions of the Act of April 4, 1868, P. L. 58, which provided that when any person shall sustain personal injury or loss of life while lawfully engaged or employed on or about the roads, works, depots and premises of a railroad company, the person so injured is to be held a fellow-servant with the employees of the railroad company if, when so acting, he is not a passenger. The cause of action here arose before the repeal of this statute.  The point was reserved for the consideration of the court in banc, and in connection with the motion for a new trial and judgment non obstante was affirmed.  This raises the only question in the case.  The plaintiff's business was that of general hauling.  Among other things it was his business to unload the coal from cars on the defendant company's siding and haul it to the pumping station some distance away.  This he had done for several years under contract, and some of his employees and teams were engaged upon this work on the day of the accident. The siding paralleled the railroad tracks, and along the

siding was a driveway. The plaintiff drove along this way in his buggy and stopped to speak to his employee, Rex, who was then on a car shoveling coal. The latter, called by plaintiff as a witness, says that plaintiff stopped, got out of his buggy and came upon the car where he was at work. The plaintiff denies that he was on the car, and says that his conversation with the witness was from his buggy. The difference in the testimony is very marked, but we cannot say that it is material. While plaintiff's case does not disclose what passed between the plaintiff and his employee, yet from plaintiff's own testimony it sufficiently appears that whether he remained in his buggy or got upon the car, his purpose in being where he was, on premises of defendant, was in connection with the unloading of the cars and the hauling the coal which he had engaged to do, and which he was then doing through his employee. Even without such admission, a presumption would arise that this was the fact from his presence there, and his interest in the work which he was having done. The plaintiff's testimony on this point is somewhat evasive. In the course of his examination many opportunities were given him to say what his purpose was in stopping to see Rex. The nearest he came to direct answer to any question was when asked the following on cross-examination: "Q. Isn't it true that you were [there] engaged in unloading this coal yourself prior to the Saturday that you were hit, and that on that Saturday you came there to see Rex that he was doing it properly? A. I told you, and his Honor and the court at large, that I had to superintend all my work— not that one thing, but all my work." This followed: "Q. And you went there this day to superintend? A. And I superintended it right along, with the rest of my work." From these answers, and the general facts in the case giving rise to the presumption we have above indicated, we are of opinion that the court was justified in concluding that plaintiff was there at the siding engaged and employed in work which it is ordinarily the duty of railroad employees to perform. Upon leaving Rex, plaintiff drove along

the siding a distance of about 100 feet when he came to a roadway running east and crossing the tracks of the railroad. Here he turned to the right, and in crossing the tracks was run down by a passing train. Both roadways are within the defendant's right of way. In view of the conclusion reached as to the nature of the employment plaintiff was engaged in when at the siding, it is unnecessary to inquire whether the driveway leading to and from defendant's siding was only in a limited sense the premises of the railroad company, because of the general use of it allowed the public. Any question in regard to this matter would become material only in case it had appeared that plaintiff's work had no relation to railroad work as such, and was connected with the railroad only by irrelevant and immaterial circumstance of locality: Spisak v. Railroad Co., 152 Pa. 281. The case is reduced to a single inquiry—can it be said that the plaintiff was employed and engaged about railroad work within the meaning of the act when he was crossing the tracks of the company, and met with his injury? He was then on his way to attend to business with which the railroad company was not related in any way whatever. So long as he was engaged in personally superintending the unloading of the coal, he was doing the work which properly belonged to the railroad company. He was therefore doing it on their behalf, and stood towards the company in the relation of an employee. Had he been injured while upon or about the cars on the siding superintending the work in which his immediate representative or servant was engaged, he would unquestionably have come within the provisions of the act, and he could have no right of recovery for injuries resulting from the negligence of a coemployee. But the business of superintending the work had, at least for the time being, ceased, and he was proceeding elsewhere when the accident occurred. This circumstance brings the case within the ruling in Baird v. Pettit, 70 Pa. 477. It was there held that the relation of master and servant ceased when the employee quit work at the close

of the day and was leaving the building to go to his home. The accident for which recovery there was allowed occurcured outside the building in which plaintiff had been employed. Upon leaving the building to go to his home he fell upon a pile of dirt and rubbish on the sidewalk in front of the premises, a few feet from the steps of the building, which one of defendant's employees had negligently left there. The language used in the opinion of the court in that case is directly applicable here. "But there is another reason for holding the rule which exempts a master from liability for an injury occasioned by the negligence of a servant does not apply in this case. The relation of master and servant did not exist between the parties when the plaintiff received the injury. He was not then in the service of the defendant; he had quit work and was on his way home. He was no longer subject to the defendant's control and bound to obey his orders. As soon as he left the building he was his own master. He was then no more in the defendant's service than any other citizen passing along the street, and he was entitled to the same rights and immunities. If the relation of master and servant did not cease when he left the building, after his day's work was done, when did it? It cannot be pretended that it followed the plaintiff home, and remained with him while there. And if not, it must have ceased when he left the building, and he had the same right to an unobstructed sidewalk in front of the defendant's premises as any other citizen, and if injured by a dangerous obstruction, the same remedy for an injury." Granted that this plaintiff's use of the crossing was only permissive, nevertheless, not being at the time engaged in work for the railroad company, he was entitled to the same rights and immunities as any other citizen using the same privilege. The evidence shows that this crossing was used largely by the public. There can be no reason for holding that this plaintiff, while using a crossing which was open to the public going about business with which the railroad company had no relation, was to be regarded as an employee

of the company. As we view it the case does not fall within the provision of the act, and the judgment non obstante calls for reversal.

The opinion filed in granting the judgment n. o. v. clearly reveals the attitude of mind of the judges who have presided in the several trials of this case. Each has shown settled distrust of the evidence produced on behalf of the plaintiff. But for this distrust the nonsuit would not have been granted on the second trial. In reviewing that case we found occasion to say: "The credibility of testimony in general is for the jury, and the remedy for a perverse verdict, or one against the weight of the reasonable and properly credible evidence is a new trial— a remedy that ought to be freely applied whenever the verdict in the opinion of the court is perverse in the sense that it goes beyond the limits of a reasonable difference of opinion upon the facts as found or admitted. But the remedy in this form is not the same as that of nonsuit, and care should be taken to avoid confusing them." What is here said applies equally when judgment non obstante is resorted to as a remedy. If the court was of opinion that this verdict was perverse, the motion for a new trial should have prevailed; instead, however, it was discharged, and a mistaken and inappropriate remedy adopted.

The assignment of error is sustained, the judgment is reversed, and the record is remitted with directions to the court below to enter such judgment as law and right require.