# Burns & Reilly Real Estate Co., Appellant, *v.* Philadelphia Life Insurance Company.

*Insurance—Life insurance—Authority of general agent—Making of loans.*

A brokerage firm acting for clients approached the general agent in its own city of a life insurance company of a distant city, for the purpose of making application for mortgage loans for its clients. The agent had authority to solicit insurance and take applications therefor and to receive premiums in payment for insurance but he had no authority to deal with the matter of loaning money by the company upon mortgages, or with the making of loans in any way. He perhaps had in his possession blank forms upon which application for loans could be made. Upon these forms the brokerage firm made applications for the mortgage loans, and these were sent to the home office of the company. At the time this was done the agent represented to the brokerage company that as a condition of obtaining the loans policies of insurance

would have to be taken out on the lives of their clients. Applications for insurance containing no reference to the loans were accordingly signed by the clients, and the money to pay for the premiums for the first year was advanced for the applicants by the brokerage company, and paid over to the agent. Subsequently the company declined to make the loans. The agent did not refund the money to the brokerage firm although he agreed to do so if the loans were not made. There was no evidence that the company knew of the action of the agent or had ratified it. The brokerage company brought suit against the insurance company to recover the premiums paid to the agent. *Held*, (1) that as the contract of insurance was between the defendant company and the applicants, the plaintiff company had no standing to maintain the action; (2) that if the applicants were entitled to the policies which the insurance company refused to deliver, they, and not the brokerage firm were the proper parties to maintain the suit; (3) that the insurance company was not bound by the act of its agent in making the agreement respecting the loan, and (4) that the Act of May 3, 1909, P. L. 405, prohibiting the giving of rebates or other valuable considerations in an insurance contract, had no application.

Argued November 1, 1912. Appeal, No. 231, Oct. T., 1912, by plaintiff, from judgment of C. P. Allegheny Co., May T., 1910, No. 759, on verdict for defendant in case of Burns & Reilly Real Estate Company v. The Philadelphia Life Insurance Company. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Assumpsit to recover back insurance premiums. Before SHAFER, J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned*, among others, was in giving binding instructions for defendant.

*J. Frank McKenna*, with him *E. J. McKenna*, for appellant.—Billmire, the "local manager," had authority

to bind the company: Com. v. Johnson, 144 Pa 377; Adams Express Co. v. Schlessinger, 75 Pa. 246; Wayne International Bldg. & Loan Assn. v. Moats, 149 Ind. 123 (49 N. E. Repr. 793).

The fact that the applications for insurance filed with the insurance company contained a clause agreeing that all representations and agreements made by or with the company or agent taking the application, are reduced to writing and made a part of the application, can have no force in estopping the appellant from recovering back the money paid: Reed v. Philadelphia Life Insurance Co., 59 Pitts. Leg. J. 265.

*Frederic W. Miller,* for appellee.—Billmire had no authority to contract as to loans: Hoffman v. Ins. Co., 92 U. S. 161; Cox v. Ins. Co., 113 Ill. 382; Dodge v. Williams, 47 Pa. Superior Ct. 302; American Car & Foundry Co. v. Water Co., 221 Pa. 529; Mundis v. Emig, 171 Pa. 417; Murphy v. Ins. Co., 30 Pa. Superior Ct. 560.

Billmire's authority did not extend to the receipt of money deposited conditionally: Hoffman v. Ins. Co., 92 U. S. 161; McCulloch v. McKee, 16 Pa. 289; Lauer Brewing Co. v. Schmidt, 24 Pa. Superior Ct. 396.

The contracts could, so far as the life insurance company is concerned, be at most nothing more than contracts relative to taking out insurance: Robb v. Insurance Company, 230 Pa. 44; Otto Gas Engine Co. v. Pepper, 228 Pa. 205; S. Morgan Smith Co. v. Power & Supply Co., 221 Pa. 165; Ridgeway Dynamo & Engine Co. v. Cement Co., 221 Pa. 160; Rinker v. Insurance Co., 214 Pa. 608; Express Pub. Co. v. Aldine Press, 126 Pa. 347; Scientific American Compiling Dept. v. Creighton, 32 Pa. Superior Ct. 140.

The contracts were illegal and void under the Act of May 3, 1909, P. L. 405.

OPINION BY MR. JUSTICE POTTER, January 6, 1913:

In an effort to secure for certain customers loans upon

real estate, the plaintiff, the Burns & Reilly Real Estate Company of Pittsburgh, acting as a broker, wrote to the Philadelphia Life Insurance Company, presenting for consideration certain loans, and asked for a blank application form, and by the treasurer of the insurance company it was referred to Mr. George G. Billmire, of Pittsburgh, whom he styled "our local manager." As a matter of fact Mr. Billmire was, as clearly appears from the evidence, the general agent of the defendant company in Pittsburgh, with authority to solicit insurance and take applications therefor, and to receive premiums in payment for insurance. He was perhaps in possession of blank forms upon which applications to the company for loans could be made, but he was without authority to pass upon such applications or to deal in any authoritative way with the matter of loaning money by the company upon mortgages, or with the making of loans in any way. Certain interviews were had between the representative of the plaintiff company and Mr. Billmire, but just what occurred thereat was not shown. It does appear, however, that certain applications for loans upon real estate were filled out, and sent to the Philadelphia office of the defendant company, to be dealt with there. It also appears clearly that Mr. Billmire exercised no discretion or control in any way over the granting of the real estate loans for which these applications were made, and the granting or refusing of the loans was entirely within the discretion of the investment committee in Philadelphia. That such was the case was known to the plaintiff company, for its representatives were repeatedly in communication with the treasurer of the defendant company, urging a speedy disposition of the applications, and more than once they went to the home office of the defendant company, in an effort to hasten action. The insurance company finally declined to make the loans, and the chief purpose of the negotiations failed. But it also appears that Mr. Billmire, whose business it was to

solicit insurance, and collect premiums, had represented to the plaintiff company, that as a condition of obtaining the desired loans, policies of insurance must be taken out by the applicants upon the lives of John J. O'Reilly and William C. O'Reilly, in the sum of $20,000 each, and upon the life of C. M. McKenny for $15,000, and upon the lives of George H. Shickler, Carl H. Shickler, George O. Shickler and Sara Taggart in amounts aggregating $100,000. Applications for the insurance were duly signed by the parties designated to be insured, and the sum of $3,129.65 in payment of the premiums for the first year, was advanced for the applicants by the Burns & Reilly Real Estate Company, and was paid over to Mr. Billmire, the general agent of the defendant company. Payment of this money to him as premiums for insurance, which had been solicited and placed by him, was, of course, payment to the defendant company. These payments were made on or before February 2, 1910. Some time in the month following the real estate loans under negotiation were declined, and the plaintiff company, relying upon an agreement with Billmire, that the money which it had advanced for the payment of premiums should be refunded, if the real estate loans for which negotiations were pending, were not granted, made demand upon the insurance company for repayment, and that being refused, it brought this suit to recover.

On the trial the court below reached the conclusion that no authority from the company to Mr. Billmire, empowering him to make any such agreements had been shown, and a verdict for the defendant was directed.

We agree with the trial court that there is no evidence that Mr. Billmire had any express authority, to couple with applications for insurance any agreement as to the granting of loans by the company upon real estate, and that the general scope of his employment did not authorize any such action upon his part. Nor was there any evidence sufficient to justify its submission to the jury

of knowledge upon the part of the company that such agreements had been made in this case, or any evidence of ratification thereof by the company. It must be assumed that in dealing with Mr. Billmire concerning the real estate loans, the Burns & Reilly Real Estate Company dealt with him as an individual, and not as the general agent of the insurance company, for he had no authority to make any representations for the defendant company with respect to such loans. But as to soliciting insurance, and receiving premiums therefor, he had full authority. In this case the applications for insurance were, however, as shown by the exhibits, made by the parties whose lives were to be insured, and in each case a statement was included "that all representations and agreements made by or with the company or the agent taking this application, are reduced to writing herein, and made a part of this application." No reference in any of these applications was made to any agreement with Mr. Billmire, which made the issue or acceptance of the policy conditional upon the grant of a real estate loan, or which called for the return of the premium by the company unless such a loan was granted by it.

In so far then as the matter of life insurance was concerned, the applications showed only that the transactions were the usual ones, contemplating the payment of the premium for the first year, and the issue of the policy. The applicants were entirely justified in making payment of the premium, or in having it paid for them, to Mr. Billmire, as general agent of the company. When the premiums were paid, the company was bound to issue the policies, or in case of its refusal to do so, it was bound to return the premiums. But for any breach of duty in this respect it was accountable to the applicants for insurance, and the right of action was in them. The premiums were paid by them, or for them. They and the beneficiaries alone were concerned in the insurance. The Burns & Reilly Real Estate Company had no

interest in the insurance; it was merely acting in the matter for the applicants who were its customers, and by whom it had been employed to negotiate as a broker for loans to them upon real estate. The obtaining of insurance was incidental to the main purpose of procuring the loans. The evidence shows that the plaintiff company advanced the money to pay the premiums, under written agreements with the applicants for insurance, and that it provided for reimbursement out of the proceeds of the mortgage loans in the event of their being finally closed, or granted. The contract of insurance was, however, between the defendant company and the applicants for insurance. When the premiums were paid to the general agent of the company, the applicants were entitled to the policies, as provided for in the contract. If the defendant unlawfully denied their right to the policies, they had their lawful remedy. But we do not see that any right of action in this respect, as against the defendant company, became vested in the present plaintiff, the Burns & Reilly Real Estate Company. This view renders it unnecessary to consider whether or not the Act of May 3, 1909, P. L. 405, prohibiting the giving of rebates, or any other valuable consideration not specified in the policy contract, has any application to the facts of this case. Such an inquiry might be material in an action by an applicant for insurance, to recover the amount paid as premium, on the ground that the company had failed to furnish the insurance for which payment was made. Whether or not it did so would be a question of fact. If, as herein held, the negotiations for loans in so far as conducted with Mr. Billmire, were with him as an individual, and not as a representative of the insurance company, it is difficult to see how the policy contracts could be in any way affected thereby. The full rate of premium seems to have been paid, and as a matter of fact no loans were made by the company. It contends that the granting of loans and the placing of insurance were kept entirely

separate, and that the one matter had nothing to do with the other. However, that question is not now before us.

The assignments of error are overruled, and the judgment is affirmed.