# Reed v. Philadelphia Life Insurance Company, Appellant.

*Insurance—Delivery of policy—Suit to recover back premiums.*

In an action against a life insurance company to recover premiums paid for a policy of insurance which had never been actually delivered to the plaintiff in person, the case is for the jury where it appears that after the premiums had been paid to the agent of the company, the plaintiff had withdrawn his application; and that the agent had never paid over the premiums to the company, and the evidence is conflicting as to whether the company had sent the policy to the agent to be delivered unconditionally to the plaintiff.

Argued April 28, 1914.    Appeal, No. 116, April T., 1914, by defendant, from judgment of C. P. Allegheny Co., April T., 1913, No. 2,781, on verdict for plaintiff in case of Carson N. Reed v. Philadelphia Life Insurance Company.    Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.    Affirmed.

Assumpsit to recover premiums paid on policy of life insurance.

At the trial the court returned a verdict for plaintiff.

On motion for defendant non obstante veredicto MACFARLANE, J., filed the following opinion:

Four cases were tried together in which the plaintiffs were John Duster at No. 2,778, Thomas N. Gummert at No. 2,779, Edward H. Kennerdell at No. 2,780, and Carson N. Reed at No. 2,781, April Term, 1913.    The facts are identical except in one particular in Reed's case.    Each is to recover a premium paid in advance on December 6, 1909, with an application for a policy of life insurance.    On April 7, 1910, the plaintiffs withdrew the applications, claiming that the policies had not been delivered.

The defense showed that the plaintiffs were joint owners of a piece of real estate and applied to Billmire,

an agent of the defendant, for a loan of $25,000, and for life insurance in the same amount and paid to him in advance $1,108.90, the amount of the first year's premiums thereon, and he gave them a receipt in which he agreed to cancel the policies and to return the money if the mortgage loan was not granted within thirty days. The applications were received by the company and the policies were issued on December 14 and 16. Defendant's testimony was that they were at once sent to Billmire. On December 22 Billmire settled with the company for the premiums. The loan was afterwards refused.

The two questions submitted to the jury were whether the policies had been delivered to the plaintiffs personally, and whether they were sent to Billmire, the court holding that if they were sent to him it was for delivery to the applicants and delivery to him was delivery to the plaintiffs.

The reason for the motion for judgment non obstante are first, that the contract was illegal; second, that the burden of proof was on the plaintiffs to show non-delivery of the policies and that they failed to do so, and, third, that the evidence of delivery to Billmire was conclusive and for the court.

We will first consider the third reason. The actuary of the company testified that the policies were given to a clerk whose name he did not recollect and who was not produced. Billmire was not a witness. Perry, who had been a clerk for Billmire, testified that the policies had been received in his office and that he himself had made a record of them in a book kept for that purpose and that after Billmire had absconded he found these policies with others and returned them to the Philadelphia office and a witness testified that they were received. There was no record in the home office of the sending of the policies. Billmire's record was not produced. Perry's testimony was based on his recollection. He could not recall definitely what other policies came to the office at that time, but remembered two in Jan-

uary out of five or six.  The president of the company
in answer to a letter from Reed stated that his policy
had not been sent.  He corrected this in his testimony
and stated that he was mistaken.  Billmire in answer
to the inquiries of the plaintiffs made at various times
said that nothing had been done.  The plaintiffs all tes-
tified that they had never received the policies.  The
company did not write them notifying them of the issu-
ing of the policies.

We have no records or letters and no documentary
evidence except the policies themselves.  The case was
for the jury: Second National Bank of Pittsburg v. Hoff-
man, 229 Pa. 429, and cases therein cited.

The next proposition is that the contract was illegal
and plaintiffs could not recover on a part of it.  These
plaintiffs first brought an action upon the paper signed
by Billmire as general agent, and on a rule for judgment
for want of a sufficient affidavit of defense it was held
that the agreement violated the Act of May 3, 1909,
P. L. 405, prohibiting an insurance company or any
officer, agent, solicitor or representative thereof, or any
broker to give any inducement and prohibiting any
person from receiving any inducement to insurance: Reed
v. Phila. Life Ins. Co., 50 Pa. Superior Ct. 384.  That
action was discontinued and these suits brought.  Mech-
ling v. Phila. Life Ins. Co., 53 Pa. Superior Ct. 526,
was an action to recover the premium on a promise of
Billmire to refund it in case a loan was not accepted by
the company and the contract was held illegal.  In
Burns and Reilly Real Est. Co. v. Phila. Life Ins. Co.,
239 Pa. 22, the policies were taken on the lives of in-
dividuals and the premiums were advanced by the plain-
tiff company which sued to recover upon an agreement
with Billmire that the money advanced for premiums
should be refunded if loans were not granted.  It was
held that no right of action vested in the plaintiff as
against the defendant company, as the contract of in-
surance was with the applicant, and that this rendered

it unnecessary to consider whether the act of 1909 had any application.

In the Burns case it was said: "Such an inquiry" (whether the act would apply to an action on the application itself) "might be material in an action by an applicant for insurance to recover the amount paid as premium on the ground that the company had failed to furnish the insurance for which payment was made. Whether or not it did so would be a question of fact. If as herein held the negotiations for loans in so far as conducted with Mr. Billmire were with him as an individual and not as a representative of the insurance company, it is difficult to see how the policy contracts could be in any way affected thereby. . . . However, the question is not now before us." In the Mechling case it was said that so far as the matter of life insurance was concerned the application showed only that the transaction was the usual one contemplating the payment of the premium and the immediate issue of the policy and it was following the Burns case, that Billmire was without authority to represent the company in any matter relating to the making of loans, and had no authority to make any representation with respect to them, and, quoting the Burns case, "it must be assumed that in dealing with Mr. Billmire concerning the real estate loans the Burns and Reilly Real Estate Company dealt with him as an individual and not as the general agent of the insurance company, for he had no authority to make any representations of the defendant company with respect to such loans." The court proceeds that if the plaintiff paid the money as a premium of insurance he received what he bargained for. If he paid it to secure a loan without disclosing that to the company he dealt with Billmire as an individual, and to him he must look for reimbursement.

In the Mechling case the court said, "If the covenant made by Billmire, upon which the plaintiff relies, may be considered as a part of the contract of insurance,

then not being specified in either the application or the policy it constituted an inducement to the insurance within the meaning of the act of May 3, 1909. . . .

"This contract is of the very character which it was the purpose of the act of 1909 to prevent and punish, and the plaintiff thus basing his claim upon an unlawful contract is not entitled to recover."

In these cases the actions were based on the promise of Billmire, and the remarks of the court as to illegality must be considered in view of that fact. It was not held that the defense of illegality would avail in suits based, as the cases at bar are, on the failure of the company to accept the offer in the applications and thus complete the contract of insurance. Under the finding of the jury this is the situation here: plaintiffs made their propositions and paid the premiums, the contract of insurance was not completed, as the policies were not delivered. Can the defendant now retain the money advanced because of the contract with Billmire? Under facts identical with those before us the courts held that contracts with Billmire were with him as an individual, that the company had no part in the illegal transaction and the insurance was a separate matter. The plaintiffs do not require the aid of the illegal transaction to make out their cases. They do not seek to enforce the contract of insurance, but to withdraw from their offer. An illegal contract collateral to the one sought to be enforced does not necessarily vitiate the latter: O'Hare v. Second Nat. Bk. of Titusville, 77 Pa. 96; Irvin v. Irvin, 169 Pa. 529. But this action does not affirm the contract, whether it be illegal or not. It arrests it. It is founded on a disaffirmance: Spring Co. v. Knowlton, 103 U. S. 49; Peters v. Grim, 149 Pa. 163; Dauler v. Hartley, 178 Pa. 23.

The plaintiffs also contend that there was no contract because the policies do not conform to the applications. It is true that the policies contain many things not specified in the applications, but the plaintiffs must have known that insurance companies have forms for

their policies and they could have familiarized themselves with the kinds in use, and the fact that they applied for and agreed to accept "insurance on the 20-payment life plan" shows that they did know. "Ordinarily it is not expected that an application will contain all of the terms and conditions which are included in the policy when it is issued. Certain particulars are named; others are not. The application is for such insurance on such terms and conditions as, in view of the particulars submitted, the company sells:" Com. Mut. F. Ins. Co. v. Knabe, 171 Mass. 265. They saw the policies before this suit was brought and yet do not set up any discrepancy in their statements of claim. The point is an afterthought. The criticism that the policies called for the payment of premiums in advance while the application is for premiums payable annually is without merit. The plaintiffs paid the first premium in advance and agreed that the payments on the policies should be annual, which would of course make the renewal premiums in advance.

We cannot agree with the plaintiffs' position that delivery to Billmire would not be delivery to them. They introduced in evidence from the affidavits of defense the admission that Billmire had authority to canvass for applications and collect the premiums. The premiums were paid to him in advance, the applications were forwarded, and if the policies had been delivered to him there was nothing more to be done but to deliver them and the situation was the same as in the Mechling case where it was held that the company became bound even if the physical possession of the policy was not by Billmire delivered to the plaintiff.

On a former trial of these cases verdict was for the plaintiffs for less than the full claim and a new trial was granted on that account. This verdict might indicate a compromise. Nevertheless, it is a finding by a jury that the policies were not delivered to Billmire. We are not convinced that these verdicts are against the weight of

the evidence. It is not sufficient ground to grant a new trial that the trial judge might have found the fact differently. The plaintiffs showed that they did not receive the policies, and this undoubtedly shifted the burden to the defendant and it failed to satisfy the jury that it had sent the policies.

#### ORDER.

January 22, 1914, new trial is refused and motion for judgment non obstante is overruled and judgment may be entered upon the verdict upon payment of the verdict fee.

*Error assigned* was in overruling motion for defendant n. o. v.

*F. W. Miller*, with him *Clifton Maloney* and *Pier Dannals*, for appellant.—The evidence as to delivery was such that there was no question of fact for the jury: Mechling v. Phila. Life Ins. Co., 53 Pa. Superior Ct. 526; Burns & Reilly Real Est. Co. v. Phila. Life Ins. Co., 239 Pa. 22; Lonzer v. Lehigh Valley R. R. Co., 196 Pa. 610; Walters v. American Bridge Co., 234 Pa. 7.

The verdict was in direct and perverse disregard of the evidence and indicated that the jury had indulged in capricious disbelief: Sloan v. Phila. & Reading Ry. Co., 231 Pa. 332.

*Nelson McVicar*, with him *S. M. Hazlett* and *S. H. Gardner*, for appellee.—The question whether the policies were delivered to the agent of appellant for delivery to the insured without condition, before the applications were withdrawn, under the evidence was a question of fact for the jury: Bartlett v. Rothschild, 214 Pa. 421; Second Nat. Bank of Pittsburg v. Hoffman, 229 Pa. 429; Fry v. National Glass Co., 219 Pa. 514; Rondinella v. Metropolitan Life Ins. Co., 24 Pa. Superior Ct. 293; Bradley v. American Telegraph, etc., Co., 54 Pa. Superior Ct. 388.

OPINION BY PORTER, J., July 15, 1914:

The opinion of the learned judge of the court below, in. disposing of the motion of the defendant for judgment non obstante veredicto, which will appear in the report of this case, renders extended discussion of the questions involved unnecessary.   Prior to bringing this action, this plaintiff and · three other persons, jointly, brought an action of assumpsit against the present defendant company to recover the aggregate amount of certain premiums of insurance which had been paid to the defendant, by said persons severally, basing their allegation of a right to recover upon a written contract entered into by the plaintiffs in that action with one Billmier, who undertook to act as general agent for the defendant company.   The written contract upon which the plaintiffs in that case declared was, to state it briefly, a covenant that in case the defendant company failed to loan the sum of $25,000 to Reed and those associated with him, within thirty days, the total amount of the first year premiums which Reed and the others, severally, had the same day paid upon policies of life insurance for which they had that day applied, should be returned without cost.   The defendant company filed an affidavit of defense, stating the scope of the authority of Billmier to act for it as agent and denying that he had any authority to make the contract upon which the plaintiffs, in that joint action, relied.   The court below held that affidavit of defense to be insufficient and entered judgment in favor of the plaintiffs, which action this court held to be erroneous and reversed the judgment, with a procedendo: Reed et al. v. Philadelphia Life Insurance Co., 50 Pa. Superior Ct. 384.   The plaintiffs then discontinued their joint action. Reed subsequently brought this action to recover the amount of the premium of insurance which he had individually paid, averring that the amount had been paid on December 6, 1909, when he made an application for life insurance in the defendant company, in the sum

of $10,000, a copy of the application being attached to and made part of the statement. The plaintiff further averred that he had given defendant written notice of the withdrawal of said application for insurance, which notice was received by defendant company on April 10, 1910; that plaintiff's application for insurance was not accepted by the defendant at any time before said withdrawal; that no policy of insurance was tendered or delivered to the plaintiff at any time prior to said notice of the withdrawal of his application; that defendant company refused to return to plaintiff the amount of the premium which he had paid and the company received, and that he was entitled to recover the amount in this action. This case has been twice tried in the court below, the first trial resulted in a verdict for the plaintiff in an amount less than ·the plaintiff was entitled to recover, if he was entitled to recover anything, and the court granted a new trial. The case was tried a second time and resulted in a verdict and judgment for the plaintiff, from which the defendant appeals.

The present case presents questions entirely distinct from those which were considered by this court in Reed et al. v. Philadelphia Life Insurance Co., supra. The four plaintiffs in that joint action based their allegation of a right to recover solely upon the written agreement of Billmier, the agent of the defendant, and all that was decided in that case was that the allegations of the affidavit, if true, constituted a good defense to any action of the plaintiffs on that written agreement. Billmier was without authority to bind the company by that agreement. The contract of insurance was founded upon the respective applications of the individuals, to the defendant company, for insurance, and the applications made no mention of nor reference to the unauthorized contract into which Billmier had entered. The defendant company had no notice of the contract which Billmier had made and was not bound by its terms. That contract was collateral to and not a part

of the proposed contract for insurance. "In so far then as the matter of life insurance was concerned, the applications showed only that the transactions were the usual ones, contemplating the payment of the premium for the first year, and the issue of the policy. The applicants were entirely justified in making payment of the premium, or in having it paid for them, to Mr. Billmier, as general agent of the company. When the premiums were paid, the company was bound to issue the policies, or in case of its refusal to do so, it was bound to return the premiums. But for any breach of duty in this respect it was accountable to the applicants for insurance, and the right of action was in them. The premiums were paid by them, or for them. They and the beneficiaries alone were concerned in the insurance:" Burns & Reilly Real Estate Co. v. Philadelphia Life Insurance Co., 239 Pa. 22. If the defendant company had caused the policy for which Reed applied to be delivered to him, or, the plaintiff having paid the premium, if the company had sent the policy to Billmier for delivery, without condition, to the plaintiff, the contract of insurance would have been completed, and the company become bound even if the physical possession of the policy was not by Billmier delivered to the plaintiff. Had that been the case Reed would not have subsequently been in position to assert that he was still entitled to have the full amount of his premium returned to him, because of the unauthorized contract which Billmier had made: Mechling v. Philadelphia Life Insurance Co., 53 Pa. Superior Ct. 526.

There was in the present case no question as to Reed's having paid the full amount of the first annual premium. The fact that he had given notice of the withdrawal of his application, which notice had been received by the company on April 10, 1910, was not disputed. The policy never had been in the physical possession of Reed prior to the time he gave notice of the withdrawal of his application, nor was there any evidence tending

to establish that the policy had been tendered to him personally. The plaintiff testified that he had demanded his policy or a return of his money, of Billmier, the agent of the defendant at Pittsburg, in January, 1910, and that the latter had said he could not comply with the demand. The material question of fact which was in dispute in the case was whether the company had sent the policy to Billmier for delivery, without condition, to the plaintiff, prior to the time plaintiff gave notice of the withdrawal of his application. The court instructed the jury that if the defendant company had sent the policy to Billmier for delivery, without condition, the plaintiff was not entitled to recover. The fact that the policy never had been personally tendered to the plaintiff being undisputed, and Billmier being the agent of the defendant, over whom the plaintiff had no control, the burden was upon the defendant to show that the policy had been so sent to Billmier for delivery, as the fact was one peculiarly within the knowledge of the company or its own agent. The defendant company produced the oral testimony of a number of witnesses tending to establish that the policy had been by the defendant company put into the possession of Billmier, for purpose of delivery to the plaintiff. One of those witnesses testified that he had seen the policy in the office of Billmier, at Pittsburg, but that witness also testified that there was kept in the office of Billmier a record of the policies received by him from the defendant company, yet that record was not produced at the trial. The actuary of the company testified that the policies were given to a clerk, at the home office, whose name he did not recollect and who was not produced. Billmier was not called as a witness, and it seems that he had absconded. There was no record in the home office of the sending out of the policies, or at least none was produced at the trial. The clerk who had mailed the policies to Billmier, if they were mailed, was not called as a witness. The president of the defendant

company had, on April 1, 1910, written a letter to counsel for the plaintiff containing this statement: "I find among our papers, however, an application made by Carson N. Reed for insurance, the policy number being 15636 and that the insurance was approved December 13, 1909, but no money has ever been paid to this company for it, therefore, the policy has never been sent from this office. As soon as the premium is paid to us the policy will be in force." The president's deposition had been taken and was read at the trial, in which he said that the above statement quoted from his letter had been a mistake. The evidence being of this character, the court could not declare as matter of law that the policy had been sent by the company to Billmier for the purpose of delivery, without condition, to the plaintiff. The court submitted that question to the jury, with instructions of which the defendant has no just cause for complaint. The specifications of error are overruled.

The judgment is affirmed.