# The Union Railroad and Transportation Company
## *versus* Riegel & Co.

1. Plaintiffs shipped goods to Indianapolis by defendants who gave this receipt: " Received, Philadelphia, &c., of (plaintiffs) the following articles, to be carried and delivered upon the terms, &c., on the back of this receipt. ' Marked F., Indianapolis, for J. Furniss, care S. F. Gray, agent" of defendants. One of the terms was, that packages should be marked with consignee's name, &c. The manifest corresponded with the receipt. There was evidence that by direction of Welsh, an agent at Philadelphia, the name of Furniss was not in fact on the box, and that he would order Gray not to deliver till directed. The receipt was filled in by the plaintiff's clerk and signed by defendants' clerk. Gray delivered the goods to Furniss who failed without paying. In a suit for negligence; the court charged " The contract depends entirely on the verbal arrangement, of which you are judges ;" *Held* to be error ; the contract was to be ascertained by the jury from both receipt and verbal arrangement.

2. Declarations of defendants' agent within a reasonable time after the transaction were evidence against them.

January 13th 1873.   Before READ, C. J., AGNEW, WILLIAMS and MERCUR, JJ.   SHARSWOOD, J. at Nisi Prius.

Certificate from Nisi Prius : To January Term 1870, No. 404.

This was an action brought March 4th 1870, by Jacob Reigel, Samuel G. Scott and others, trading as Jacob Reigel & Co., against The Union Railroad and Transportation Company, for negligence in the wrongful delivery of goods, sent by the plaintiffs to the defendants, to be transported by them to Indianapolis.

The plaintiffs' allegations were that they had been negotiating with Furniss & Co., of Indianapolis, for the sale of dry goods, but being doubtful of the solvency of Furniss & Co., they agreed with the defendants to transport the goods to that place, to defendants' agent there, not to be delivered to Furniss & Co. without further instructions; that the agent delivered them to Furniss & Co. notwithstanding. After the delivery Furniss & Co. failed, and the plaintiffs were never paid for the goods.

The case was tried at Nisi Prius, February 7th 1871, before Read, J.

S. G. Scott, one of plaintiffs, testified :—

" In December 1869, a member of the firm of Furniss & Co., of Indianapolis, called in our store to purchase goods. There was nothing concluded between me and Furniss. I sent for Mr. Welsh, agent of the Union Railroad and Transportation Company. He came to see me on December 10th 1869. I told him we had goods to ship to Furniss & Co. They were not to be delivered until we instructed the Union line to deliver them. Mr. Welsh told me not to put Furniss & Co. on the boxes, but to mark them **F**, Indianapolis, care of S. F. Gray, agent." He said he would write to the agent next day not to deliver the goods until we instructed them. I told Mr. Welsh the reason, which was, because our salesman was anxious that Furniss & Co. should have the goods so that

they might have them for sale during the holidays. After the 10th of December 1869, the first time I saw Mr. Welsh was after the delivery of the goods to Furniss & Co.

The plaintiff proposed to ask what Welsh then said: This was objected to by defendant.

Judge Read admitted the question, saying: "I think that what this agent would say within a reasonable period after the transaction would be evidence."

A bill of exceptions was sealed.

Witness: "I told him in the following month that I was surprised that the goods were delivered without our instructions. Mr. Welsh was also surprised. I told him we would have to look to the railroad company. I saw him a few days after. He then said we had given the consignees' name on the shipping receipt, and the company would not be responsible. I asked him whether he had given us any directions as to drawing the shipping receipt. He said he had not. The receipt was kept by us. The receipt did not go from Philadelphia. It was brought back by our drayman. This shipping receipt is in the handwriting of Fenner, our shipping clerk, who is now in our employ. It was written by our clerk, and sent by us to Thirteenth and Market streets, and brought back by our drayman."

John W. Emmet testified:—"I was salesman of Jacob Riegel & Co. in December 1869. I sold Furniss goods about this time. * * * I went to Indianapolis. I got there in the first part of January 1870; I went to the depot of the Union Line, and asked if any goods were there for Furniss & Co. They said no. The shipping agent opened a book and showed me some goods that were shipped to Furniss & Co., marked **F** I think, to care of Gray. He said they had been delivered. I told him they ought not to have been delivered until Jacob Riegel & Co. had sent instructions, as the goods were not paid for."

James M. Fenner testified:—"In December 1869, I was in the employ of Jacob Riegel & Co., as clerk in the store. My business was to receive goods sold, and send them out on drays. I took place of shipping clerk. These boxes, when I first saw them, were marked John Furniss & Co., Indianapolis. 'John Furniss & Co.' was planed off, and '**F**, care of S. F. Gray,' put on before they left the store. I gave them to drayman. The drayman brought back this slip receipt. The writing, 'Jacob Riegel & Co., '' John Furniss & Co.,' '**F**,' and everything in writing but signature, *is in my* handwriting. I knew of no arrangement Scott had made with Welsh. Scott told me to plane off 'John Furniss & Co.' These blanks are supplied by the railroad company."

Scott, recalled, testified:—"Mr. Welsh told me he had written to Gray about the goods, after I had heard of delivery of goods to

[U. R. & T. Co. *v.* Riegel.]

Furniss. He said he had written to Gray not to deliver the goods. The goods have never been paid for; they are insolvent."

For the defendant James D. Welsh testified: "I am the agent of the Union Railroad and Transportation Company. On the 10th of December 1869, Mr. Scott told me he had six cases of dry goods he wanted to ship to parties in Indianapolis, and he was not sure they were good. I suggested to him to mark [F] care of S. F. Gray, agent, Indianapolis, and give no other consignee. They were to be consigned to S. F. Gray, agent; so that our agent in Indianapolis would not know to whom to deliver them. I said I would write to Mr. Gray, telling him what was done. He would have asked who was the consignee; to avoid this I wrote to him to allow them to remain in his depot. I simply told Mr. Scott to mark the goods. I did not say to Mr. Scott that I would write to Mr. Gray not to deliver the goods, as that would have been foolishness. Mr. Gray would not know to whom to deliver. I wrote to Mr. Gray on the 11th day of December. I told Mr. Scott to mark the packages [F] care of S. F. Gray, agent, Indianapolis, Indiana. I wrote to Mr. Gray that as to six cases of goods, marked as I said before, to hold them subject to our order. This was to prevent him asking for a consignee."

D. Buist, the slip clerk of the Pennsylvania Railroad Company, testified that the manifest on which these goods were entered went with the car which took the goods.

The defendants gave in evidence the receipt for the goods and the manifest. The receipt, which was in a printed form, was:—

" *This receipt, properly filled up by the Shipper, must accompany the Freight.*

PENNSYLVANIA RAILROAD COMPANY'S FREIGHT STATION, * * *

Received Philadelphia, Dec. 10th 1869, of J. RIEGEL & Co., the following articles, contents and condition unknown, to be carried and delivered upon the terms and according to the agreement as specified on the back of this receipt.

Marked [F] Indianapolis, Ind. For J. FURNISS & Co., care S. F. Gray, Agt.

Number and description of packages.—Six (6) boxes dry goods.
BUIST."

On the back of the receipt was printed, among other things, as follows:

"It is agreed, and is part of the consideration of this contract:

"1. That all goods received for transportation shall be properly packed, and distinctly marked with the name of the consignee and the station where and to whom consigned." * * *

The manifest was:

[U. R. & T. Co. *v.* Riegel.]

" Manifest of Merchandise forwarded by the UNION R. R. TRANS-PORTATION Co. to Pittsburg from Philadelphia, Dec. 10th 1769.

| MARK | DESTINATION | CONSIGNEE. | Point Receipted to. | ARTICLES. | Weight |
|---|---|---|---|---|---|
| [F] | Indpls, Ind........ | S.F.Gray, ag't J. Furniss..... | Home........... .................. | Bx. D. G., 420, 360, 380, 360, 420, " " 180,............................. | |

Samuel F. Gray, agent of defendant at Indianapolis, testified : " We did receive six packages mentioned on manifest, and delivered them to Furniss & Co. I received a letter from Mr. Welsh, dated 24th of January, stating he had sent me a letter on the 11th of December. The letter of December 11th was never received by me or subordinates. Mr. Emmet first called between the 27th of December 1869, and first week in January 1870, to see me. He made inquiry concerning these six packages. I informed him they had been delivered to consignees, J. Furniss & Co. He said, had you no word from Philadelphia to hold goods ? I said I had not." * * *

M. Horace McKay, a member of the firm of J. Furniss & Co., testified : " I remember the purchase of goods from Riegel & Co.; remember the receipt of the bill. I made no contract about the goods. These goods were received by our firm, and delivered from line by our draymen. We received bills from this firm by due course of mail. There were conditions at same time as bills were received. We received notice from Riegel & Co. There were no directions not to receive the goods; but after they were received, certain conditions were to be complied with. Goods were received about middle of December. Emmet's first visit was after the holidays, and about the 1st of January I saw him; visited store several times; came in in a friendly way. He did not tell us we ought not to have received goods, and found no fault with us for receiving them. We closed our house on the 26th of January, the day our failure took place. Emmet's next visit was two, three, or four days after this." * * *

The defendant proposed to ask witness : " What would your firm have done if you had received notice from the company, within a reasonable time, that the delivery to you had occurred through any mistake or alleged mistake of the company ?"

This was objected to by plaintiff, overruled by the court, and a bill of exceptions sealed.

Welsh again testified : " On the 22d of January 1870, Scott notified me of the non-delivery of goods. I went up to the depot, and found the name of consignee on manifest, receiving book, and slip receipt book; came down and told Scott they must have put consignee on slip receipt. I then wrote to Gray. Scott did not then tell me he would hold the company responsible."

Read, J., charged :—" This is an action between Jacob Riegel &

[U. R. & T. Co. *v.* Riegel.]

Co., the plaintiffs, and the Union Transportation Company, the defendants, on a contract under which the defendants were to hold goods until further orders. [The contract depends entirely upon a verbal arrangement, of which you are the judges. The goods were not sent according to the usual and ordinary terms by which this company sends goods, but they were sent under a special contract.] The first question is, what the contract is? The second, whether the plaintiff has complied with the terms of the contract. If the plaintiff complied, and the defendants did not, then the defendants are answerable. One of the parties to the arrangement was a member of the firm of Riegel & Co., and I will read portions of his testimony. Then I will read a portion of the testimony of Mr. Welsh." (Judge Read here read Scott's testimony). " 'I sent for Mr. Welsh on 10th of December 1869. I told him I had six packages to send—that they were not to be delivered until we instructed the Union Transportation Company to deliver them. Mr. Welsh told me not to put the name of the firm on the packages; he told me to mark **F**, care of S. F. Gray, agent, Indianapolis, Indiana. He said he would write to ' the agent there. I told Mr. Welsh the reason, and that I wanted goods to arrive in time for the holidays. I do not know whether I told him the terms of the sale.'

" Then in a subsequent conversation, ' I think it was in January, I said I was surprised, and said I would look to the company.' Mr. Welsh said we had given the name of the consignee in the [slip receipt], then I said ' Did you give any directions in regard to the shipping receipt ?' He said ' No.'

" Then Mr. Welsh said: ' I am agent of the Union Transportation Company, my office is at No. 415 Chestnut street. In December 1869, Mr. Scott sent for me to come to his store. I went. He said he had goods to send to Indianapolis, to Furniss & Co., *who were not so good.* I told him he had better mark the goods **F**, and give no other consignee, and then the agent would not know to whom the goods were to be delivered. I said I would write. I did write to our agent there.'

" [There is the contract—there is no difference between them, in their recollection. It would appear, then, that the contract was specially to take these goods to Indianapolis, and not to deliver them to Furniss & Co. Did Mr. Scott follow the instructions of Mr. Welsh ?]

" It is in evidence that the name ' Furniss & Co.' was planed off [the boxes.] It is in evidence that they were marked exactly · as Mr. Welsh directed, so that the name of the station and name of consignee on the boxes was in accordance with Mr. Welsh's directions. If this be the case, then, Mr. Scott so far complied with the instructions of Mr. Welsh.

" [Then comes another element, that of the shipping receipt,

which, as I understand it, is not a bill of lading, but merely a shipping receipt, given by the company to the drayman who delivers the goods, to show that the goods have been received. It is returned to the shipper, and does not go on with the goods. Where there is a special contract, such as this was, it is a question whether that receipt formed any part of the contract at all. The evidence is that Mr. Scott subsequently asked Mr. Welsh whether any instructions were given in regard to the shipping receipt, so that what was done with the shipping receipt does not make any difference in regard to the contract that was made.] Then this item of direction is on the back of the receipt. (Article 1 from the printed matter on the back of the receipt.)

" [The question is, whether Mr. Scott performed his part of the contract. If he did defendants are undoubtedly liable, for they have not performed their part; they did not keep the goods until instructions. If they made this contract, no matter whether the communication to their agent was made or not, they were bound to keep the goods.]

" Now there was another part. In order to make this more certain, there was a letter to be written. No doubt it was written. There is no doubt it never arrived. Whether it was not mailed by the agent or clerk of the transportation company, or whether it was mailed or miscarried, we have no evidence. It never was received. [If it was not put into the post-office, it was the negligence of the parties; and perhaps there should have been some testimony to show that that letter went into the post-office; because, when a party writes a letter and intended to send it, and it never arrives, it is proper to trace the letter into the post-office, if any one knows anything about it.] We can only assume that the letter was written, and that it did not arrive. There is a good deal in the other parts of the case, that have formed food for argument, that have nothing to do with the case. Did Riegel & Co. comply with their part of the contract? If they did the defendants are liable.

" I am requested to charge on the following points by the defendants :—

" ' 1. The terms set forth in the receipt of 10th December 1869, superseded the arrangement made with Mr. Welsh respecting the consignee of goods.' .

" I decline so to charge.

" ' 2. On the arrival of the goods at Indianapolis, the agent there was authorized by the terms of the said receipt to deliver them to J. Furniss & Co.'

" I decline so to charge."

The verdict was for the plaintiffs for $1944.69.

The defendants took a writ of error and assigned for error :—

1, 2. The rulings on the offers of evidence.

[U. R. & T. Co. *v.* Riegel.]

3. The part of the charge first enclosed in brackets.
4. The part of the charge secondly and fourthly so enclosed.
5. The part of the charge thirdly so enclosed.
6. The answer to the 1st point.
7. The answer to the 2d point.

*W. A. Porter*, for plaintiffs in error.—Declarations of an agent, made not at the time of entering into a contract, but after the transaction is past, are not admissible in evidence against the principal : Hough *v.* Doyle, 4 Rawle 291 ; Hannay *v.* Stewart, 6 Watts 487 ; Hubbard *v.* Elmer, 7 Wend. 446 ; Stiles *v.* The Western Railroad Corporation, 8 Metc. 46 ; Clark *v.* Baker, 2 Whart. 340. The receipt was a contract between the shipper and the transporters : Bates *v.* Todd, 1 Moody & R. 106 ; Babcock *v.* May, 4 Hamm. (Ohio) 345 ; Ide *v.* Sadler, 18 Barb. 33. Previous conversations between Scott and Welsh were merged in the writing : Monongahela Navigation Co. *v.* Fenlon, 4 W. & S. 208 ; Mumford *v.* McPherson, 1 Johns. 414 ; Vandervoort *v.* Smith, 2 Cain. 161 ; Howes *v.* Barker, 3 Johns. 506 ; Creery *v.* Holly, 14 Wend. 26 ; La Farge *v.* Rickert, 5 Id. 187 ; Barber *v.* Brace, 3 Conn. 9. The receipt authorized the agent at Indianapolis to deliver the goods to Furniss : Bristol *v.* Rensselaer & S. R. R., 9 Barb. 158.

*G. W. Biddle* and *P. McCall*, for defendants in error.— Declarations of an agent acting as such, within a reasonable period of time after a transaction, are competent testimony against his principal : Stockton *v.* Demuth, 7 Watts 39 ; Hannay *v.* Stewart, 6 Watts 487 ; Clark *v.* Baker, 2 Wharton 340 ; McCotter *v.* Hooker, 4 Selden 407 ; Dodge *v.* Bache, 7 P. F. Smith 421. Parol evidence of what occurs at or shortly before the execution of a written instrument to control its effect is admissible : Bank *v.* Fordyce, 9 Barr 275 ; Rearich *v.* Swinehart, 1 Jones 238 ; Chalfant *v.* Williams, 11 Casey 212 ; Lewis *v.* Brewster, 7 P. F. Smith, 410 ; The Baltimore & Philadelphia Steamboat Co. *v.* Brown, 4 Id. 77 ; McCotter *v.* Hooker, 4 Selden 497 ; Blossom *v.* Griffith, 3 Kernan 569 ; Purcell *v.* Southern Express, 34 Georgia 315 ; Hutchins *v.* Ladd, 16 Michigan 493 ; Michaels *v.* N. Y. Central R. R., 30 N. Y. 164 ; Reed *v.* Spalding, Id. 630.

The opinion of the court was delivered, February 3d 1873, by
MERCUR, J.—The first and second assignments of error are not sustained. The 3d, 4th, 5th and 6th will be considered together. They all relate to the ascertainment of the contract under which the merchandise in question was delivered to the defendants.

The plaintiffs gave evidence that Furniss & Co., of Indianapolis, desired to purchase goods of them upon a credit. Not being satisfied as to their solvency, plaintiffs made an arrangement with Mr. Welsh, agent for the Union Railroad & Transportation Com-

pany, before delivering the goods for transportation, by which the boxes should be marked "[F] Indianapolis, Indiana, care of S. F. Gray, Agent," and should not be delivered to Furniss & Co. until further orders from plaintiffs. The boxes thus marked were delivered to the defendants. The plaintiffs claimed this to be the contract under which they delivered, and the defendants received, the goods.

The defendants gave evidence that when the drayman subsequently, upon the same day, delivered the goods to them, he brought and presented for their signature, a shippers' receipt, filled up by plaintiffs' shipping clerk, in which the boxes were described as marked "[F] Indianapolis, Indiana. For J. Furniss & Co., care S. F. Gray, Agent." Upon the face of the receipt it declared they were "to be carried and delivered upon the the terms and according to the agreement as specified on the back of this receipt."

Upon the back of this receipt, *inter alia*, is printed, "it is agreed and is part of the consideration of this contract,

"1. That all goods received for transportation shall be * * * distinctly marked with the name of the consignee, and the station where and to whom consigned."

That the defendants signed said receipt and returned it to the drayman, who took it back to the plaintiffs. This direction, as contained in the receipt, was substantially copied into the manifest which was sent on to Gray.

It appears that upon the arrival of the goods Gray delivered them to Furniss & Co., who soon after failed and the goods were lost to the plaintiffs.

The counsel for the defendants requested the court to charge the jury that the said shippers' receipt superseded the arrangement made with Mr. Welsh respecting the consignee of the goods. The court declined so to charge. In this was no error. We think, however, the court did err in saying to the jury that the contract depended *entirely* upon the verbal arrangement. The court thus withdrew wholly from the consideration of the jury the shippers' receipt which was executed after the verbal arrangement. The receipt, as well as the verbal arrangement ought to have been submitted to the jury to enable them to find from the whole evidence, what the true contract was.

The 7th assignment is not sustained. It assumes the receipt alone embodied the terms of the contract. Whether the agent was authorized to deliver the goods, depended not upon the receipt alone, but upon what the jury found the contract to be under the whole evidence as we have indicated.

Judgment reversed, and a *venire facias de novo* awarded.