## Bradley *v.* American Telegraph & Telephone Company of Pennsylvania, Appellant.

*Telegraph and telephone companies—Occupancy of land—Easement—Disputed questions of fact—Case for jury—Evidence.*

1. An occupancy of land by a telephone company with its poles under a parol license from the owner of the land, lacks the essential qualities of an easement inasmuch as an easement is only established where there are two tenements owned by distinct proprietors, one to which the right is attached and another on which it is imposed.

2. When a person excuses what would otherwise be a trespass on the ground of a parol license, such license must be clearly established.

3. In an action of ejectment to compel a telephone company to give up the occupancy of land which it had used for its poles, the case is for the jury, where the plaintiff testifies that the company had received a parol license to erect the poles only on the condition that they were to be removed at the request of the owner; that the owner had absolutely refused to sign any agreement relating to the poles, or to accept any compensation; that the defendant company had accepted a license from an adjoining owner to be terminated on sixty days' notice; and that an agent of the company in charge of the location of the poles had declared that when he was getting the consent of the owner that the latter had stated that the company must get off when he gave notice.

Argued March 11, 1912.   Appeal, No. 2, March T., 1913, by defendant, from judgment of C. P. Dauphin Co., March T., 1903, No. 169, on verdict for plaintiff in case of Walter T. Bradley v. The American Telegraph & Telephone Company of Pennsylvania.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Ejectment for land in Derry township.   Before Mc-CARRELL, J.

At the trial, when the plaintiff was on the stand, the following offer was made:

Mr. Snyder: We offer to prove, may it please the court, that the defendant company has admitted repeatedly, both orally and in writing, that it has no rights upon this land,

that it has investigated the matter and that it wanted to buy them.

Mr. Geyer: We object to the offer as not being specific, in that it does not state who in behalf or on the account of the company so admitted. We request that the offer be coupled with an offer to prove that.

Mr. Snyder: We offer to prove that G. H. Warren, special agent of the company, a person with whom Mr. Bradley has had dealings for over two and a half years upon this very question, who maintains his office in Philadelphia with his name as special agent on the door, who has called upon Mr. Bradley on the ground at Swatara Station, gone over the situation, and at all times has acted as the agent of the American Telegraph and Telephone Company, and who has never denied his agency, made this offer to Colonel Bradley, both orally and by letter, which we intend in due course to offer in evidence.

Mr. Geyer: We object to this offer as framed unless the letter quoted be made part of the offer, so we may frame the proper objection.

Mr. Snyder: I make the letter part of the offer. There is no objection to that.

The Court: The letter being made part of the offer, we understand there is no objection.

Mr. Geyer: Yes, there is objection. We desire to make an objection to the offer.

Mr. Snyder: For the purpose of proving that the defendant company itself, through its agent, has admitted on more than one occasion that it has no rights upon these premises.

Mr. Geyer: If the court please, this is objected to as being incompetent and irrelevant. If the letter—and we take it the letter indicates the tone of the conversation—is admissible for any purpose it would be either as a declaration against interest or on the ground that it constitutes a surrender or an extinguishment. It is not offered for the purpose of constituting a surrender, and on its face does not purport to be so, but it is

offered as an admission by the defendant company of the plaintiff's rights. We object to it because it is, and on its face purports to be, an admission made by a special agent who has not been shown to have the authority to make the admission in question which would bind the defendant company. It is further objected to for the reason that it is not admissible as a declaration against interest, not being a declaration of a fact, but being in its nature a declaration of a conclusion of law. I further object to it as not being evidence, or being such species of declarations excluded because of public policy, because it was made during a series of conferences with respect to a compromise of the difficulties between the plaintiff and the defendant and was therefore privileged.

The Court: The objection is overruled for the present and exception noted for the defendant. When we have heard all the testimony relative to the letter and the official position of the person writing it, the effect of it will be determined. [1]

Mr. Snyder: "Q. Colonel, before introducing the letter, you may tell what conversation you had with Mr. Warren relative to the right of the American Telegraph & Telephone Company to maintain those poles upon the land? A. As I just said, I received this bill in the letter from Mr. Hoffer, who is superintendent of quarries at Swatara, and I took that right up with the company, and in reply to that why Mr. Warren called at our office on Ninth and Girard avenue, Philadelphia. Now we talked the matter over."

The Court: "Q. Is Mr. Warren's office also in Philadelphia? A. Yes, sir; in the Bourse Building. We talked the matter over in a general way and stated to Mr. Warren the records do not show that you have any right on this property, the searches do not develop that. Now you have no right to occupy my land without a compensation. If I want to send a telegraph or telephone message I got to pay for it, and I want

you to pay me for the use of that ground and we will
enter into an agreement of some kind; but before that,
I want you to give me a letter showing that you have
no rights there.   Mr. Warren said all right.   He went
back and wrote the letter, and that is the one referred
to.   Q. Was there anything said at that time, Colonel,
about the right of the company to maintain its poles,
or was there not?   A. We had a general conversation
in reference to the poles and their location; and the
right to maintain the poles specifically touched upon
at that time I do not recall.

The Court: What is the date of that letter?

Mr. Snyder: January 21, 1909.   "Q. I offer you a
paper, Colonel, which the stenographer has marked X
No. 1, look at it and state what it is.   A. This is the
letter that Mr. Warren sent me at my request after a
visit to our office at Ninth and Girard avenue, Phila-
delphia.   Q. How is it signed?   A. It is signed by G. H.
Warren, special agent.   Q. Did you receive it in due
course in the mail?   A. Yes, I received it in the mail
at Ninth and Girard avenue, Philadelphia."

Mr. Snyder: May it please the court, I want to offer
it in evidence this time and present it to the jury.

Mr. Geyer: I understand the offer now made is under
the former offer, subject to our objection?

The Court: Yes, sir, this is.

(Reading of letter marked X No. 1. to jury.)

### X No. 1.
(Letter head of American Telephone and Telegraph Co.)

PHILADELPHIA, PA., Jan. 21, 1909.

"Walter T. Bradley, Esq.,

"9th St. bel. Girard Ave.,

"Philadelphia, Pa.

"Dear Sir:

"Confirming our conversation of this date, I beg to
state that upon investigation of our records, the following
is found:

"Poles 7308–7321, inclusive, are over and along the property of J. Kauffman, from whom we have a proper grant.

"Poles 7322–7327, inclusive, are along the property of Sarah H. Landis, from whom we have a proper grant.

"Poles 7328–7341, inclusive, are over and along the property formerly owned by John Denny, from whom we have no grant there being, as you know, a letter giving permission for the location of this section of line. Therefore, no rights were conveyed to our Company by you or any former owner of the property, upon and along which said poles Nos. 7328–7341 are now located, and covering the same.

"As stated, we will be glad to pay you what is fair for rights covering the line as now located on your property, rather than move to the highway. To this end, will you kindly let me know, two or three days in advance of when it will suit you to go over the situation on the ground.

"Please permit me to thank you for your courtesy in the matter. I appreciate it sincerely.

"I am enclosing you a rough sketch of the situation.

"Very truly yours,

"G. H. WARREN,

"Special Agent."


George Seiler, the witness, being sworn:

"Q. Did Mr. Fulford say to you ——"

Mr. Geyer: We ask for an offer. I understand this was in the absence of Mr. Denny.

Mr. Snyder: I don't think it matters whether Mr. Denny was there or not. This is between Bradley and the long distance phone.

Mr. Geyer: If your honor please, I understand the offer as it was made is an offer to prove a conversation between Denny and the representative of the company had in the presence of Seiler. That is all your honor ruled on. Now if it is to be a declaration made by Mr.

Fulford in the absence of Mr. Denny, your honor will see that it is different, that it differs in a number of respects from the offer, and we would ask for another offer.

Mr. Snyder: I propose to ask the witness whether any other conversation was had with Mr. Fulford relative to the erection of those poles, for the purpose of establishing the terms under which they were erected. Denny is not a party to the agreement and it is not necessary he should be present. This is between Bradley and the telephone company, and Fulford was the agent. I do not know, your honor, if there was such a conversation.

I propose to prove by the witness that he had a conversation with Mr. Fulford, the agent of the American Telegraph & Telephone Company, in which Mr. Fulford said to him that he had the same contract to erect these poles on Denny's land that he had on the Mc-Cormick's land; this for the purpose of putting into evidence the contract in the McCormick grant, for the purpose of establishing a time of notice that was to be given to remove.

Mr. Geyer: Is this offered as an admission by the defendant as to what the contract was?

Mr. Snyder: It is offered as an admission on the part of the defendant to prove the terms of the contract. This was twenty years ago.

Mr. Geyer: It is objected to as being incompetent, it not being shown that the acting agent Fulford, now deceased, under the terms of his agency had the power to bind his principal by admission as to the terms of contracts made. It is further objected to as being incompetent and irrelevant, the witness having already testified to overhearing the contract made between Mr. Denny and this representative as to its terms. That undoubtedly would be the best evidence of what that contract was.

The Court: "Q. Mr. Seiler, according to your rec-

ollection nothing was said at that time about the length of notice to be given? A. No, sir, I can't remember anything of the kind."

Mr. Snyder: "Q. Do you mean you have no recollection whether time was specified or you have no recollection as to what the time was? A. I have no recollection of any time being set at all."

The Court: "Q. Of anything being said about time? A. No, sir."

The Court: We will overrule this objection and admit the testimony and seal a bill for the defendant. [3]

Mr. Snyder: "Q. Mr. Seiler, did you have any later or further conversation with Mr. Fulford relative to the manner or removal of these poles or the conditions under which they might be removed or anything relating to the contract? A. Mr. Fulford told me that—— Q. First when? A. Well, I can't give you the time. It was while he was getting this contract. He came in the office and said that he had the McCormick and Mr. Denny had the same contract as he had, they wouldn't take anything, but he would have to get off when he gave them notice."

The Court: "Q. Did he say anything to you about what length of time was to be given? A. No, he said he had the same contract he had with Mr. Denny he had with the McCormicks, and that he would have to get off when they notified him, but they would not take any compensation."

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1, 3) rulings on evidence, quoting the bill of exceptions; (6–12) various instructions, quoting them.

*John R. Geyer*, with him *John E. Fox*, for appellant.— The evidence of admissions of agents was inadmissible: Hough v. Doyle, 4 Rawle, 291; Magill v. Kauffman,

4 S. & R. 317; Bank of Northern Liberties v. Davis, 6 W. & S. 285; Patton v. Minesinger, 25 Pa. 393; Penna. R. R. Co. v. Books, 57 Pa. 339; Fawcett v. Bigley, 59 Pa. 411; Penna. R. R. Co. v. Plank Road Co., 71 Pa. 350; Bigley v. Williams, 80 Pa. 107; Penna. R. R. Co.'s App., 80 Pa. 265; Monocacy Bridge Co. v. American Iron Bridge Mfg. Co., 83 Pa. 517; Sidney School Furniture Co. v. School Dist., 122 Pa. 494; Matteson v. R. R. Co., 218 Pa. 527.

The license was irrevocable: Rerick v. Kern, 14 S. & R. 267; Lacy v. Arnett, 33 Pa. 169; Thompson v. McElarney, 82 Pa. 174; Pierce v. Cleland, 133 Pa. 189; Ebner v. Stichter, 19 Pa. 19; Swartz v. Swartz, 4 Pa. 353; Dark v. Johnston, 55 Pa. 164; Penna. Tel. Co. v. Lehigh Power Co. 11 Pa. Dist. Rep. 584; Moore v. Neubert, 21 Pa. Superior Ct. 144; Campbell v. McCoy, 31 Pa. 263.

*W. S. Snyder,* with him *M. E. Olmstead* and *A. C. Stamm,* for appellee.—The letter written by G. H. Warren to Walter T. Bradley was properly admitted in evidence. The declarations of the agent, Fulford, having been made "while he was getting the contract," were part of the res gestæ, and, therefore, were admissible in evidence. The declarations of the agent, Fulford, were admissible in evidence even though made after the contract was obtained: Magill v. Kauffman, 4 S. & R. 317; Stockton v. Demuth, 7 Watts, 39; Spalding v. Bank, 9 Pa. 28; Ardesco Oil Co. v. Richardson, 63 Pa. 162; Union R. R. & Transp. Co. v. Riegel, 73 Pa. 72; United Brethren Mut. Aid Society v. McDermond, 12 W. N. C. 73.

If the evidence objected to is eliminated, the other testimony shows conclusively that the poles were erected upon the condition that they should be removed upon notice. The poles having been erected upon the condition that they should be removed upon sixty days' notice, or upon notice, the appellant company had only a revocable license: Wilson v. Cather, 214 Pa. 3.

396 BRADLEY *v.* AM. TEL. & TEL. CO., PA., Appellant.

Statement of Facts—Opinion of the Court. [54 Pa. Superior Ct.

Appellant company had no easement: Hudson v. Watson, 5 Pa. Superior Ct. 456; Dark v. Johnston, 55 Pa. 164; Huff v. McCauley, 53 Pa. 206.

Appellant company has no equitable right to maintain the poles upon the land: Baldwin v. Taylor, 166 Pa. 507; Penna. Tel. Co. v. Hoover, 209 Pa. 555.

OPINION BY HENDERSON, J., July 16, 1913:

The plaintiff's evidence exhibited a clear title to the land on which the telephone poles are located. The burden was therefore shifted to the defendant to show a right to the occupancy of the plaintiff's property. This it undertook to do by the introduction of evidence tending to establish a parol license. The right asserted lacks the essential quality of an easement that there must be two tenements owned by distinct proprietors, one to which the right is attached and another on which it is imposed: Washburn's Easements and Servitudes (3d ed.), sec. 3; Grant v. Chase et al., 17 Mass. 443; Dark v. Johnston, 55 Pa. 164; nor can it exist in parol: Huff v. McCauley, 53 Pa. 206. The whole of the defendant's case, therefore, has its foundation in the allegation of a parol permission to construct the line. The letter of John Q. Denny, the owner of the land, to Mr. Seiler, dated November 19, 1890, cannot be regarded as a grant vesting in the defendant an interest in the land or a right of way over it. It does not on its face purport to confer any right. It was not addressed to the defendant nor to any person representing it, nor does it describe any location by reference to which a right could be maintained. It is a declaration to a friend of the writer's who lived in the immediate vicinity and was familiar with Mr. Denny's affairs that he had given permission to some person connected with the "Long Distance Telephone" to place some poles on his property "across from your station." This communication was handed to Mr. Zimmerman, who had the negotiation with Mr. Denny but was never delivered to Mr. Seiler. Zimmerman delivered it to

Mr. Fulford who had charge of the construction of the line. That it was not intended to be a grant of a right of way is clear from the defendant's own evidence. Mr. Denny refused to sign any paper to that effect and refused to be bound by any consideration, but told Zimmerman they could plant some poles so long as they did no damage by cutting trees. The letter was intended simply to notify Seiler that the writer had made an arrangement with Zimmerman because Denny told Seiler everything that "turned up down there," he and Seiler being very familiar. Denny's recollection was that Zimmerman was the first man to approach him with reference to placing the poles, but other evidence in the case tended to show that the permission was given directly to Fulford, the man in charge, at a later date, and that it was done on the premises in the presence of Seiler. The recollection of Denny was not distinct, and the testimony of Seiler as to the circumstances under which the permission was given to build the line across the lot was apparently more satisfactory to the jury than that of Denny, and according to Seiler's testimony the permission was a limited one. Seiler introduced Denny to Fulford; the three walked out to the ground and Fulford showed Denny where he wanted to place the poles; they then returned to Seiler's office when Fulford wanted Denny to sign a contract or paper that he would give him permission to go on the land. Denny said he would not sign a contract; that he would not sign any paper, but told him to put up his poles and if he wanted him off he would notify him to get off; that he could erect the poles but they were to be removed when notice was given to that effect. Under the evidence then the case turned on the question of fact whether a perpetual license was granted or a license at the will of the owner of the land, and this question was submitted to the jury in a clear and fair charge by the learned trial judge. A part of the evidence introduced by the plaintiff consisted of a letter written by G. H. Warren, special agent of the defendant, dated January 21, 1909. This letter grew out

of a negotiation between the plaintiff and the agent with reference to the right to maintain the poles on the ground and in regard to the number of poles standing on the plaintiff's land. It was written after a conversation between the plaintiff and the special agent which led the latter to investigate the records of the company to ascertain by what right the company had maintained its poles there and contained the statement that on investigation it was found that no rights were conveyed to the defendant by the plaintiff or any former owner of the property on and along which certain poles were located and asking for a conference for the purpose of agreeing on compensation for the use of the land. It is strongly urged by the appellant that this was inadmissible because written by an agent who was not shown to have authority to bind the company. That Mr. Warren had general supervision of the subject of right of way and the negotiation for the adjustment of claims and other difficulties which might arise with reference thereto is clearly shown. No other person had connection with that part of the business. This brought him into negotiation with the plaintiff in regard to the right of way controversy. The negotiation continued for a length of time and this letter was written while that negotiation was pending. It only asserted what appears in other parts of the case and about which we do not understand that there is any dispute. The defendant does not claim to have any writing which gives it the privilege of using the plaintiff's land. Its whole case depends on a parol license. The special agent was therefore making no concession nor was he yielding any right on which the defendant could rely. The agent merely stated the result of his examination and related the matters of fact. It is suggested that the letter contained conclusions of law, but this is not the effect of the document. The defendant was not precluded from showing that it had some sort of title and rights not evidenced by documents on file, but no effort was made to establish any other claim than that which is said to have been

given to Zimmerman by Denny. If it were out of the
case the situation of the parties would not be changed.
The defendant was put to the necessity under the plead-
ings of showing its title and no other was presented or
pretended except the parol license. Objection was also
made to the admission of the contract made by the de-
fendant with the McCormick estate in connection with
the testimony of Seiler that Fulford said to him while
he was obtaining the consent of Denny to set the poles
on his land that Denny's situation was the same as Mc-
Cormick's and that "he would have to get off when he
(Denny) gave them notice." This declaration if made
while Fulford was getting the contract from Denny was
part of the res gestæ and admissible on that account.
Moreover, the statement related to the transactions
over which he had exclusive control and which existed
by parol only according to the contention of both of the
parties, and the acts and declarations of the agent were
therefore binding on the defendant. The corporation
must act through its agents, and where it gives an agent
control of a branch of its business his declarations within
the bounds of his authority while transacting the busi-
ness affect his principal: United Brethren Mutual Aid
Society v. McDermond, 12 W. N. C. 73; Ardesco Oil
Company v. Richardson, 63 Pa. 162; Union R. R. &
Transportation Co. v. Riegel, 73 Pa. 72. But irrespec-
tive of the letter of Warren and the McCormick agree-
ment there is evidence which supports the plaintiff's con-
tention that the poles were to be erected on the condition
that they were to be removed at the request of the owner
of the land. The refusal of the owner to sign any agree-
ment or to accept any compensation, the act of the de-
fendant in accepting a license from an adjoining owner to
be terminated on sixty days' notice and the evidence of
Seiler as to the terms arranged with Fulford all support
the plaintiff's position. If the company acquired pos-
session under such circumstances and on such a condi-
tion it is not now in a situation to assert that having

erected its poles it has an executed license in perpetuity. It would be a fraud on the owner to enter in that manner and afterward hold possession under a claim of a different title. When a person excuses what would otherwise be a trespass on the ground of a parol license, such license should be clearly established. The line is near to the highway, the defendant has had long use of the plaintiff's land without compensation and we think no hardship is exhibited or circumstance established which would create an equitable estoppel.

The judgment is affirmed.